Ruffin C. J.
 

 The particular point, which arises here, has not been presented to the Court before. But, upon
 
 *295
 
 the principle of
 
 Bryan
 
 v.
 
 Bryan,
 
 1 Dev. Eq. 47, and of
 
 Lassiter
 
 v.
 
 Dawson,
 
 2 Ired, Eq. 389, it must be held for the plaintiff. Those cases establish, that, in this Slate a married woman has no equity against an insolvent husband, or his creditors, for a provision out of her legacy, distributive share, or other equitable property. It was there known and admitted to be clearly settled otherwise in England, and also in several parts of this country ; and it is now believed, that the doctrine of the Courts of equity, in nearly all the States, accords with that in England. Such a concurrence of opinion among those, who administer the system of equity, which, even to its details, is generally adopted in this State, is well calculated to make it somewhat surprising, that in this respéct our decisions should establish an exception. For, unless one adverts to the peculiar state of our law touching the provisions for widows, it may well seem singular, that a wife’s claim for a settlement out of her own property should not be deemed as equitable here as it is elsewhere. If the present members of the Court entertained, indeed, opinions on that question, different from those of their predecessors, they would, nevertheless, feel bound to adhere to what was thus distinctly decided twice with unanimity, and has' been regarded as at rest for about twenty years. But, in truth, there were reasons, we think, quite sufficient for not adopting here the notion of the supposed equity of the wife. The rule had its origin in the maxim, that he, .who seeks equity, must do equity — assuming it to be equitable, when a husband asked the assistance of a Court of equity to get in his wife’s property, to refuse it to him, unless he had made out of his estate, or would make out of hers, an adequate settlement on her. The reasons for that course of the Chanceller, undoubtedly, were, that, by the law of that county and its fixed habits, a wife had no adequate security for a livelihood, but by a settlement made by the husband of his own accord or
 
 *296
 
 under the direction of the Court. For a woman has no absolute right in England to a share of her husband’s personal estate ; but he may dispose of the whole of it before his death or by his will. It was also an incontestable fact, that, by the introduction of uses and trusts and the habits of putting the titles of nearly all the lands in England in trustees, dower in that country was not a source of livelihood, which could be at all relied on. The husband defeated it, by conveying his estates, just before marriage, in trust for himself, and making subsequent purchases in the name of a trustee. Then, as a woman might be left destitute of any personal provision, if the husband chose, however large his wealth, and also as the permanent provision, intended for her by the common law out of his land, was, by the devices of the husband, practically lost, and, as, by the course of descents, the males are preferred, and therefore women are not apt to have land of their own, there arose the clearest case imaginable for the interposition of either the legislature or the Chancellor, in aid of the wife’s claim for protection against .destitution. It happened that the parliament left the matter to the Courts; and from that necessity for creating some substitute for the legal provisions, to which the wife was once entitled, and habitually
 
 enjoyed,
 
 sprang the adjudications, on which the system now prevailing was built. But, if in the middle of the eighteenth century', parliament had taken up the subject from its foundation and enacted new and indefeasible provisions for the wifef out of the legal and equitable estates of her husband, one is apt to conclude, that it would not have required restraining words in the statute to induce the Chancellor to desist from further intercepting the exercise of the legal marital rights of the husband over any part of his wife’s fortune, Such modern enactments must be received by Courts, as the authentic exposition of what is deemed by .the legislature fit to be established, as the rights of the
 
 *297
 
 husband and the wife in the state of society, now existing, and respected accordingly. Now, that was precise.ly the condition of things in this State. Our legislature did not leave it to the Courts to adjust the rights of husband and wife in the points, in which they had lost the equilibrium, which originally existed at common law.— On the contrary, the Assembly at an early period began a course of legislation on this subject, which indicated an intention to frame a new system of our own, and has resulted in establishing a system, whereby such legal provisions are secured to married women, as seemed to the legislature to be suitable to the state of our country and the habits of our people. By it, a woman is dowable of one third of all inheritances, of which the husband dies seized, and also of trusts,.equities of redemption and other equitable estates of inheritance ; and all conveyances by the husband, with the intent to defeat dower, are avoided; and dower, or a devise in lieu of it, is exempt from the debts of the husband. Of the personal estate she is entitled to one years provision for herself and family, and absolutely to one third of the surplus, if the husband left not more than two children, and, if more, to a child’s part. And, if the husband make a will, and do not therein make provisions for the wife equal to those specified, she may signify her dissent, and shall then have those provisions made good out of the other parts of the estate. Moreover, a summary remedy is given for the recovery both of the dower and distributive share. It is obvious, that the legislature has departed entirely from the common law and •from the previous course of equity, in respect to provisions for married women, and hath established a code of our own — in many respects, indeed, much preferable for the wife. It secures to the wife indefeasible interests in all parts of her husband’s estates, and exposes her to destitution in the single case only of the husband, himself, becoming destitute. Against that, provision might be
 
 *298
 
 made by settlement; which, however, has hitherto been unusual and is not yet common with us. But, if there be no settlement, the presumption is, that in respect to fortune, as- in other things affecting their happiness, they intend by marriage to embark in one bottom, and to sink or swim together. The legislature plainly considered that the wife’s interests were sufficiently secured, and those of the issue best promoted, by placing her rights upon the footing, that the husband should do as well for his wife as he did for himself and his children, and that if he provided a livelihood for himself and his issue, he should also for her. But suppose the Court to conceive, that the code was imperfect in some respects, and did not do ample justice to the wife, could we then assume authority to supply those supposed defects in legislation, by continuing to her those equitable rights against her husband’s legal power of disposition of her
 
 dioses
 
 in action or equitable property, which had been conferred on her, when, and because, she was substantially without any legal rights in any part of the husband’s property, unless by ante-nuptial contract ? It is thought not. For the fact, that the legislature hath thus superseded the provisions for her previously existing, and secured to her others more valuable, would seem to be almost conclusive, that it was the purpose to simplify and fix definitely, as legal rights, all the claims which the wife should have out of the husband’s estate, or set up in restraint of the powers, which the common law gave him over any part of hers. However much the Court of Equity might be justified in interfering, on behalf of the wife, to supply defects in the ancient legal system, which had gradually grown or been developed through a long course of time, it is hardly justifiable in any conceivable case in a Court to take such liberties with legislation, so recent, as to make it impossible to suppose the law makers did or would not think it adequate to all the exigencies of society now existing.—
 
 *299
 
 More especially was the Court obliged to take that view oí the matter in 1826. as the construction and effect given to our statutes had been universally acquiesced in up to that time, and the supposed equity of the wife was then first suggested with us. Until that period it was the common experience, that husbands and wives, alike, relied on their legal rights, and each, though claiming no more, claimed them ; so that the husband had universally dealt with his wife’s equitable property as his own, whenever it was capable of being reduced into possession during the coverture. The conclusion of the Court, then, is, that the case of
 
 Bryan
 
 v.
 
 Bryan
 
 was good law, and that a wife has no such equity as was there denied.to her.
 

 That point being settled, it would seem to follow, that the husband has such an interest in the distributive share accruing to the wife, and that it is substantially so much his property, as to render a voluntary assignment of it by him, when insolvent, a fraud upon his creditors. It would be so, if the assignment were to a stranger without value. It must be.as much so, when the assignment is to the wife after marriage, or to a trustee for her. She does not claim under her original right. That was extinguished by the husband’s assignment, and she claims exclusively under the assignment ; and the question is, whether it is valid against his creditors. The husband’s interest, it is true, is not so vested in him finally, as to make the distributive share his to all purposes. It cannot be attached for his debts ; nor can he sue for it in his own name ; nor transmit it to his representative; but, if no! got in or disposed of by him during the coverture, it will survive to the wife or her representative. It is not supposed a Court of equity would decree payment of the husband’s debt out of the wdfe’s distributive share, if it be left, by the husband outstanding and not affected by any dealing of his, because that wmuld in effect be to compel him to assign it either in whole or in part, and
 
 *300
 
 would, to that extent, Interfere with the contingent right of survivorship, which the law leaves in the wife and of which there is no ground for equity to deprive her. It may be said, then, that the creditors have no such right to satisfaction attaching itself to this property, as entitles them to complain of any disposition the husband may make of it. But it seems otherwise to the Court. This interest would clearly pass to the assignees in Bankruptcy. That is settled in England, subject, indeed, to the wife’s equity, of which we have before spoken, which exists there but not here. So he could not be discharged, as an in» solvent debtor under our law, without including this in. terest in his schedule ; for, although the aet speaks of the estate, goods and effects of the debtor, yet it is a part of the oath, that the schedule contains ail securities and contracts, “whereby any benefit or advantage may accrue to him,” and it cannot be supposed, that one may be lawfully discharged as an insolvent to-day, with the power oí selling or reducing to his possession, to-morrow, his wife’s distributive share, to his own use; There is no middle ground, and it must be, therefore, that the insolvent husband may be kept in prison under a
 
 ca.
 
 sa., until he ap. propriates his wife’s choses to the satisfaction of his creditors, or that the wife is entitled to have them secured to her absolutely as against.him — since he cannot keep them for himself, even contingently. Having held, that the wife is
 
 not
 
 thus entitled,
 
 the
 
 other part of the alternative must be enforced , If, indeed, the creditor will not proceed by that mode to obtain an appropriation of'this interest, during the life of the husband or before he disposes of it effectually to some one else, it is his own look out. If the husband will not make the assigment, but rather lie in jail, there is no help for the creditor against the,surviving wife. But the creditor has a right to be satisfied out of the fund, wherever the husband by any act makes it his sawn. If he gets in the demand in money or specific.
 
 *301
 
 property, the creditor can look to it for satisfaction. So, if he sell it, the price is subject in the same manner. It is, therefore, fraudulent in him, as against his creditors, to convey it voluntarily; since he thereby extinguishes his wife’s right, as the next of kin, and his voluntary assignee ought not to hold in preference to the creditors. Then, as our law denies an equity in the wife to a provision out of this demand, the assignment in trust for her is purely voluntary, as much so, as ¡fit were to a stranger without a price. All the cases, in which settlements of such interests on the wife and children have been upheld, distinctly place their validity on the equity of the wife, as a subsisting independent interest, amounting to a valuable consideration for the disposition in her favor. In
 
 Gassett
 
 v. Grout, 4 Metcalf 486, after holding, that a debt from a late guardian to the wife could not be attached by a creditor of the husband before alteration, the Court held further, that an assignment of it to a trustee for the wife was not fraudulent against the husband’s creditors, ex” pressly upon the ground, that equity would not appropriate the debt to the creditors of the husband, without making a provision for her. The case of
 
 Wickes
 
 v.
 
 Clarke,
 
 8 Page 160, is precisely that now before the Court, A husband assigned to trustees, for the benefit of his wife and children, real and personal property, which accrued to the wife upon the death of a collateral relation, while the husband was insolvent. The assignment was declared valid, because it was not impeached as exceeding in value a reasonable provision, if the husband could make such a settlement of that property ; and because by the law of New York the Court of equity would hold him bound to make it at the instance of the wife. It was laid down as the rule, that the same circumstances, which would induce the Court to compel a settlement by the husband, will uphold one, already made, to the extent that would be required, if one should be directed to be made
 
 *302
 
 under the decree of the Court. Oí course, it is implied, that it would be upheld to no greater extent. In
 
 Wheeler
 
 v.
 
 Caryl,
 
 Amb. 121, Lord Hardwicke stated the samo principle thus : that if the husband come here for aid, the Court would decree an adequate settlement on the wife, and support it as a good settlement for valuable consideration ; and therefore if the husband does that, which the Court would have decreed, it is not to be deemed unreasonable, but held a good settlement against creditors It is plain, then, that it is the existence or non-exisí ence of a right in the wife to have a provison secured to her, which gives to the settlement of her distributive share on her by the husband the character of being tor value, or not. Accordingly, in
 
 Wickes
 
 v.
 
 Clarke,
 
 the decree was affirmed on appeal, in respect of the personal property, because the wife had in equity a right to have it settled on her ; but it was reversed as to the real estate, because she had no right to have the husband’s interest, as tenant by the curtesy initiate, settled on her, as against his creditors. Indeed, in England it is the rule to pay the fund of the wife to the husband without any settlement, when the parties are not the subjects of that counfiy, but of some other, the law of which entitles the husband to receive it absolutely.
 
 Campbell
 
 v. French, 3 Ves 321.
 

 • Then, as a wife has, in this State, no right to a.provision out of the personalty more than the realty, the whole conveyance here was voluntary ; and it must be declared, that the plaintiff, who was a creditor at the time of the assignment, is entitled to satisfaction of his debt and costs at law, and in this Court out of the personal fund in the hands of the administrator or trustee — the bill not praying any relief in respect of the land.
 

 Per Curiam.
 

 Decreed accordingly.